UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.

NATHON JAMES ZINK,

        Defendant.

_____/

Case No. 1:22-cr-022

Hon. Hala Y. Jarbou
United States District Judge

### DEFENDANT'S SENTENCING MEMORANDUM AND BRIEF IN SUPPORT OF DOWNWARD DEPARTURE OR VARIANCE

Introduction

Nathon James Zink will appear for sentencing before this Honorable Court on June 21, 2022, at 10:00 a.m. Pursuant to a plea agreement filed on March 2, 2022, Mr. Zink pleaded guilty to Count 1, Mailing a Threatening Communication, and Count 2, Mailing a Threatening Communication to a Federal Employee. (ECF No. 16, Plea Agreement, PageID.23-32.)

A Presentence Investigation Report (PSR) has been prepared and disclosed to both parties. (ECF No. 25, PSR, PageID.69-97.) The parties agree that Mr. Zink's advisory sentencing guideline range is 100-125 months, based on a total offense level of 24 and a criminal history category of VI.

Mr. Zink respectfully submits this sentencing memorandum in support of his request for a sentence below the guideline range.

Nature and Circumstances of the Offense

At the time of this offense, Mr. Zink was in the custody of the Michigan Department of Corrections (MDOC), serving a 2009 sentence for an arson case. In that case, when he was in his early 20s, he and a buddy were drinking together and went to cause some mischief at a neighboring house. No one lived in the house, which was located on a county road out in the country. They started a fire and took off. After a brief investigation, Mr. Zink confessed and ultimately pleaded guilty. He was sentenced to 84 months to 20 years in prison, and he was ordered to pay over $80,000 in restitution.

Interest accumulated on the restitution while Mr. Zink was serving his sentence, raising it to over $102,000 by 2020. He worked in the kitchen at the MDOC, making about $20 to $30 monthly, and here and there a friend would send him $20. After the restitution was drawn from his account each month, he was left with only about $11. He received no financial support from his family.

Mr. Zink was unable to afford commissary items during his long custodial sentence, so he hoped he could ask to defer payments on the restitution until he could secure better paying employment. So, after researching the appropriate process for making the request, he completed and filed the proper paperwork with the state court. Namely, he politely requested, in writing, that the state court defer the costs and restitution amount. However, the state judge summarily denied his request.

When he was notified of the denial, Mr. Zink was frustrated. He had tried to do things correctly, providing an explanation of his indigent status and asked to pay the balance in the future when he was earning an income. He was so upset that he did not know what to do, but he had to get his feelings out, so he wrote a letter venting his

emotions. He knew he was facing many more years in custody, and he did not intend to carry through with any threat. However, Mr. Zink did not think about the reaction that his statements might create in other people who read the letter, and what the consequences for him might be. A couple weeks later, when he felt another frustration, he vented in the same way: by writing a frustrated letter to the federal court. In fact, Mr. Zink had never had any contact with the federal court system, and again, it was impossible for him to carry through with any threat.

MDOC records show that in March 2020, months before the offense conduct in this case, Mr. Zink had requested mental health help. He asked the providers appropriate questions about "how he can do better." In June 2020, Mr. Zink reviewed information about the anger management program at the MDOC. He tried to start the program, but he was waitlisted.

At the time of the offense in fall 2020, Mr. Zink was housed alone in segregation, where he was not permitted to have a television. During his time in segregation, he explained to mental health services that he was having a hard time, explaining that he was "just sitting in that cell staring at the bricks." Despite MDOC's classification of him "mentally ill," he only was given Trazadone, an anti-depressant medication. MDOC records also show that if he was sleeping when they came to do rounds, he was not administered the medication. This happened several times a week.

Mr. Zink was indicted in the instant case on February 15, 2022. He then was transferred from the MDOC to federal custody, where he has remained for the duration of this case. He has not presented a management problem for authorities.

<u>History and Characteristics of Mr. Zink</u>

Mr. Zink is 35 years old. He was born and raised in rural southwest Michigan. He does not know the identity of his biological father. His mother, Stella, explains that his father was unwilling to acknowledge paternity, so he took his stepfather's last name. Mr. Zink has several maternal siblings. Each of them has a different biological father.

In addition to his mother and stepfather, Mr. Zink's grandparents helped raise him. As a young boy, he was a good student, attaining A and B grades. Because he lived out in the country, far from town, he was unable to participate in many after-school activities. Instead, he spent his free time in the woods, hunting, fishing, and camping, activities he still enjoys.

Sadly, Mr. Zink was run over by a car when he was a boy, resulting in his placement in a full body cast. Also, when he was about 10 years old, he sustained a severe head injury that required stitches. As a young man, he tried marijuana and tried methamphetamine a few times, but these substances did not correlate with him getting into trouble. However, he recognizes that alcohol, which he first used when he was only 8 years old, has caused him problems.

Since he was young, Mr. Zink has been diagnosed with several mental health problems, including schizophrenia, depression, anxiety, and ADHD. He has a long history of suicidal ideation---MDOC records show that after the offense in this case, he tried to commit suicide several times, by ingesting razor blades, cutting himself, and overdosing on medication. After his attempts to kill himself, Mr. Zink finally was administered the Haldol injection. He later was prescribed Trazadone, Effexor, and Artane as well.

In early summer 2021, he told his counselor that he wanted to "get better," but, he despaired, "I need more hope." He said to MDOC staff, "I get aggressive and mess my life up," and pleaded that "[I] want it to stop." Mr. Zink finally made it off the waitlist for anger management programming at the MDOC, but before he was able to get invested in the program, he was brought into federal custody to address the instant charges.

Need for Sentence Imposed and Motion for Downward Departure<br>for Mental and Emotional Condition

Mr. Zink respectfully submits that U.S.S.G. § 5H1.3 (Mental and Emotional Condition) is a ground for downward departure in this case. The Supreme Court repeatedly has recognized the principle that a person's mental "deficiencies do not warrant an exemption from criminal sanctions, but diminish their personal culpabilities." *Atkins v. Virginia*, 536 U.S. 304, 318 (2002). *See also California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J. concurring) (majority opinion overruled on other grounds by *Atkins*, *supra,* 536 U.S. 304) ("Where a defendant's crime is attributable to … emotional or mental health problems the defendant is less culpable than one without the excuse.").

Here, Mr. Zink's mental health diminishes his personal culpability. The record shows he has been diagnosed with schizophrenia, anxiety, depression, and ADHD, and has a history of suicide attempts. At the time of the offense, he was locked up in segregation with no interaction with the outside world—he did not even have a television to engage his mind. Before and after the offense, he requested help for his mental problems. And most compellingly, he was not on the medication he is on now, which has enabled him to manage his conditions. Mr. Zink was frustrated, isolated, and suffering from mental illness. He did not intend to truly hurt anyone, and no one was (or could

5

possibly have been) injured by the threats due to his incarceration. He had no way to go visit the state court judge or obtain anthrax. The language in the letters was outlandish and sprinkled with nonsense: for example, he signed the letter to the state court with a smiley face and included the salutation "tata for now" to the federal court.

The § 3553(a) factors require the Court to consider the "just punishment" for a particular offense. 18 U.S.C. § 3553(a)(2)(A). And while punishment necessarily involves the deliberate infliction of suffering on a person, the infliction of more suffering through additional custodial time, especially on those who already suffer from mental illness, runs counter to the foundational principles of federal sentencing. 18 U.S.C. § 3582(a), *see also Tapia v. United States*, 564 U.S. 319 (2011). The grant of a downward departure would result in a sentence that constitutes a just punishment by reflecting the circumstances of the offense, taking into account his mental health status, and ensure he is able to receive necessary treatment to assist in his rehabilitation.

Mr. Zink is very remorseful for doing what he did. He believes that if he had appropriate counseling and medication, he could manage his emotions better and "things like this wouldn't happen." Indeed, his MDOC records show that he reached out to the mental health professionals about the hard time he was having prior to the incidents. The provision of appropriate pharmacological treatment may help Mr. Zink establish a foundation upon which cognitive therapy can be built. But just as important is the administration of therapy, and with the same counselor—studies show that the relationship between a therapist and client is one of the most important factors in the success of mental health treatment.[1]

---

[1] *See* Krupnick, et al, "The Role of the Therapeutic Alliance in Psychotherapy and Pharmacotherapy Outcome: Findings in the National Institute of Mental Health Treatment of Depression

Unfortunately, in recent years, mental health treatment services for prisoners on the lowest care level has been mostly limited to psychiatric medication, not therapy.[2] Even the limited number of overburdened psychologists at the BOP often are asked to engage in non-therapy related enforcement activities, like working gun towers and prisoner escorts, rather than devoting their efforts and time to the provision of mental health treatment.[3]

A defendant is "entitled to the benefit of any ambiguity in the Guidelines as well as a presumption that the Guideline more favorable to him operates in the absence of a **preponderance** of proof supporting a more onerous Guideline." *United States v. Vasquez*, 791 F. Supp. 348, 351 (E.D.N.Y. 1992) (emphasis added). Here, the circumstances show that due to his condition, he is "less culpable than one without the excuse," taking this case out of the heartland. *See Brown, supra,* 479 U.S. at 545 (O'Connor, J., concurring). A within-guideline sentence would be unduly harsh, relative to other defendants who do not have such vulnerability. A downward departure is warranted based on a balancing of the applicable factors and facts of the case.

Alternative Motion for Downward Variance under 18 U.S.C. § 3553(a)

If this Court declines to grant Mr. Zink's request for a downward departure, he respectfully requests a downward variance under 18 U.S.C. § 3553(a). The Supreme Court in *Koon v. United States*, 518 U.S. 81 (1996), generally informs us that district

---

Collaborative Research Program," The Journal of Clinical Psychology, June 1996, https://pubmed.ncbi.nlm.nih.gov/8698947/.

[2] *See* Thompson, et al, "Treatment Denied: The Mental Health Crisis in Federal Prisons," *https://www.themarshallproject.org/2018/11/21/treatment-denied-the-mental-health-crisis-in-federal-prisons*.

[3] *Id*.

7

courts enjoy broad discretion in deciding whether to vary when the particular factors of the case are outside the heartland of Guidelines cases. The *Koon* Court explained that in order to resolve this question:

> . . . the district court must make a refined assessment of the many facts that bear on the outcome, informed by its vantage point and day-to-day sentencing experience. Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases.
>
> *Koon, supra*, 518 U.S. at 82.

In support of his request, Mr. Zink incorporates by reference the facts set forth in the motion for downward departure. The circumstances of the offense, in particular, that he was affirmatively seeking mental health help before and after this offense, and the fact that he did not intend to, nor could he, carry through with any threat, distinguishes this case from one where the offender is not in custody. His personal history of severe mental health issues, exacerbated by inadequate treatment at MDOC and the strains of solitary confinement on a person suffering from mental illness, are factors that are present in an "unusual" way. The need to provide Mr. Zink with the necessary correctional treatment in the most effective manner does not require a guidelines sentence. He has been in continuous custody since 2009, and his current maximum discharge date at MDOC is 2042. He is facing lengthy consecutive sentences, with an upcoming sentencing on a state conviction and seven additional pending state cases. (*See* ECF No. 20, paragraphs 57, 64, 65, 66, 67, 68, 69, 70.)

Mr. Zink hopes that the mental health treatment provided at the BOP will be more effective than which he previously received. He plans to take as much treatment and

coursework as he can to help him manage his mental health, stay out of trouble, and someday get home and secure employment again. He is an industrious person and a hard worker; while in custody, he completed his GED, an accomplishment of which he is very proud. He also has drywalling and welding skills and he is interested in additional vocational training at the BOP.

## Conclusion

For the foregoing reasons, Nathon James Zink respectfully requests that the Court exercise leniency and levy a sentence below the guidelines range.

Respectfully submitted,

SHARON A. TUREK
Federal Public Defender

Dated:  June 14, 2022

/s/ Joanna C. Kloet
JOANNA C. KLOET
Assistant Federal Public Defender
50 Louis NW, Suite 300
Grand Rapids, Michigan  49503
(616) 742-7420